IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>FRANCK DAVIDOFF | Criminal Action No.<br><br>1:18-CR-410-AT |

**The Government's Sentencing Memorandum**

The United States of America, by Byung J. Pak, United States Attorney, and Diane C. Schulman, Special Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum.

**I.     Background**

On October 23, 2018, Franck Davidoff and Dwight Pearson were named in a 21-count indictment charging them with one count of conspiracy to commit wire fraud in violation of Title 18 U.S.C. § 1349, 13 counts of substantive wire fraud in violation of Title 18 U.S.C. § 1343, and seven counts of aggravated identity theft in violation of Title 18 U.S.C. § 1028A.  These charges stem from a complicated fraud scheme where Davidoff and Pearson used stolen information from legitimate businesses to open merchant bank accounts, and then used stolen personal identifying information ("PII") to open credit accounts and direct payments to those merchant accounts.  Payments made into the merchant accounts were then directed to bank accounts that Pearson and Davidoff controlled.  In this manner, the Defendants stole over $2.3M.

1

On June 12, 2019, Pearson proffered with the Government. At the proffer, Pearson explained that he and Davidoff first met in 2009 when they engaged in cell phone fraud together. Later, in 2010 and 2011, they worked together filing fraudulent tax returns. Sometime in 2017, Davidoff approached Pearson because he needed money. Pearson loaned Pearson $5,000 and introduced him to the scheme involving equipment fraud. Later, they began engaging in the credit card fraud scheme that is the basis for the charged conduct.

According to Pearson, he and Davidoff assumed different roles in the scheme. Davidoff did most of the leg work while Pearson did the computer work. Davidoff opened the bank accounts. Pearson purchased the fake identities. They split the proceeds 60/40, with Davidoff receiving 60 percent.

On March 22, 2021, Davidoff pled guilty to count one, conspiracy to commit wire fraud, and count fifteen, aggravated identity theft. The PSR calculated Defendant's total offense level as 28, his criminal history as Category 1, and his guideline range as 78 to 97 months, plus two years consecutive on the 1028A charge, for a total custody range of 102 to 121 months. (PSR, p. 29). Defendant has filed several objections. At sentencing, the Government will recommend a sentence consistent with the low end of the Guidelines. This memorandum addresses the relevant objections to the PSR. The Government will address the 3553(a) factors at the sentencing hearing.

## II. The PSR properly assessed a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C).

Because of the sophisticated nature of the conduct, the PSR assessed a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C). Davidoff claims that the conduct was not sophisticated and therefore not deserving of the two-level enhancement. The Court should reject Davidoff's claim. The fraud scheme involved in this case was sophisticated and the two-level enhancement should apply.

According to the Guidelines, conduct is sophisticated if it is especially complex or intricate. *See* U.S.S.G. § 2B1.1, App. Note 9(B). The Guidelines provide examples like operating the scheme from one jurisdiction but soliciting operations in another jurisdiction; and using fictitious identities, corporate shells, or offshore financial accounts to hide assets or transactions. *Id*.

Here, the conduct was sophisticated because the scheme involved using multiple bank accounts to hide the fraudulent transactions. The Eleventh Circuit has upheld the application of the sophisticated means enhancement where the defendant used multiple bank accounts or other financial instruments. *See United States v. Suarez*, 364 F. App'x 602, 605 (11th Cir. 2010). Davidoff and Pearson's conduct involved much more than multiple bank accounts. It involved stolen corporate identities and stolen individual identities. Pearson obtained corporate identities on the dark web. Davidoff then used them to open merchant bank accounts. They then used stolen PII of individuals to run credit cards, directing payments to the corporate bank accounts they had opened. Thus, this scheme involved multiple bank accounts opened in the names of multiple

3

businesses and also involved the use of multiple stolen identities to make fraudulent credit card transactions. Contrary to defense counsel's suggestion, this was certainly not a "run of the mill" fraud scheme. It was complicated and intricate. In short, it was sophisticated and the two-level enhancement was correctly applied.

### III. The PSR properly assessed a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(17)(A).

Davidoff and Pearson's conduct resulted in an actual financial loss of over $2.3M to Synchrony Bank. Pursuant to the Guidelines, a two-level enhancement applies if the defendant individually derived more than $1M in gross receipts from one or more financial institutions. *See* U.S.S.G. § 2B1.1(b)(17)(A); App. Note 3(A). Thus, the PSR assessed a two-level enhancement pursuant to this section.

Davidoff objected to the application of this enhancement, claiming that he did not received $1M in gross receipts because he was not involved in the scheme for the entire period.

The Government argues that a preponderance of the evidence supports finding that enhancement applies. The parties agree that the appropriate intended loss attributable to Davidoff is $3,826,889.50. This amount reflects the intended loss incurred from October 2017.

The actual loss amount for the same time period is approximately $1,906,433.52. This amount reflects money that both Davidoff and Pearson actually received. The Government argues that Davidoff received over $1M of

the $1.9M and therefore the two-level enhancement pursuant to 2B1.1(b)(17)(A) applies.

The loss amount consider loss from three different schemes: the credit card scheme, the equipment fraud scheme, and the Verizon phone scheme. Pearson told law enforcement that Davidoff received 60 percent of the proceeds from the credit card scheme. Davidoff has not denied this claim. There is no evidence regarding how the proceeds from the equipment fraud and Verizon fraud were split, but given that Davidoff and Pearson acted as equal partners, a reasonable inference can be drawn that they split the proceeds 50/50.

According to the Government's calculation, the credit card scheme accounts for approximately $1,397,542.54 of the $1.9M. According to Pearson, Davidoff received 60 percent which equates to $838,525.52. The remaining fraud schemes account for $508,891.41. Assuming Davidoff received 50 percent, he received $254,445.70 for a total amount of $1,092,971.22. Thus, the two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(17)(A) was properly applied.

### IV. Davidoff is not entitled to a role reduction pursuant to U.S.S.G. 3B1.2(b).

Davidoff argues that he should receive a two-level reduction for role pursuant to U.S.S.G. 3B1.2(b). The Court should not give Davidoff a reduction for role because he was not a minor participant.

A minor participant is a defendant "who is less culpable than most participants, but whose role could not be described as minimal." *See* U.S.S.G. 3B1.2, App. Note 5. In determining whether a minor role reduction is warranted,

5

the district court "(1) must measure the defendant's role against the relevant conduct for which he was held accountable at sentencing, and (2) may also measure the defendant's role against the participants." *See United States v. Stewart*, 835 F. App'x 495, 497 (11th Cir. 2020) (quoting *United States v. DeVaron*, 175 F.3d 930, 945 (11th Cir. 1999)). A defendant is not automatically entitled to a minor role deduction merely because he was somewhat less culpable than other participants. *Id*. at 498.

Considering Davidoff's role in light of the *DeVaron* standard, Davidoff should not get a deduction based on his role in the offense. First, Davidoff has only been held responsible for the relevant conduct that he engaged in. The PSR deducted the loss amounts that occurred prior to October 2017 based on Davidoff's objection that he was not involved in the scheme in that time frame. Even after that amount was deducted, Davidoff remained responsible for $3.8M. Thus, he received the same 18-level enhancement for loss as Pearson, even though the PSR limited his relevant conduct.

When comparing Davidoff's role in the offense conduct to Pearson's, it is clear that he should not get a deduction for minor role. While it is true that Pearson introduced Davidoff to the fraud scheme, it not is not correct to say that Davidoff had a smaller role in the scheme than Pearson. In fact, the opposite is true. Davidoff opened the bank accounts. Davidoff ran the credit cards. Pearson taught Davidoff how to do the fraud and then he let Davidoff do it with little supervision. He provided the identities and Davidoff used them. For his conduct, Davidoff received 60 percent of the proceeds to Pearson's 40 percent.

Clearly, one would not expect a minor participant to receive a greater share of the proceeds than other participants. For these reasons, the Court should deny Davidoff's objecting seeking a reduction for role in the offense.

## Conclusion

The Government asks that the Court deny Defendant's objections to the PSR.

Respectfully submitted,

KURT R. ERSKINE
 *Acting United States Attorney*

/s/DIANE C. SCHULMAN
 *Special Assistant United States Attorney*
Georgia Bar No. 497764
Diane.schulman@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

        Ben Alper

August 19, 2021

        /s/ DIANE C. SCHULMAN

        DIANE C. SCHULMAN

        *Special Assistant United States Attorney*